E. C. CODY, G. W. CODY, HATTIE CODY, GLENN CODY, JOHN CODY, LONAZELLE BREWER, GURNEY BREWER, IRENE CODY, BY HER NEXT FRIEND, HATTIE CODY, v. WILL ENGLAND.

(Filed 13 December, 1939.)

**1. Trial § 37—**

A verdict must be certain and responsive to the issues, and should establish facts sufficient to enable the court to proceed to judgment, and when its terms construed with reference to the pleadings, evidence and charge of the court remain ambiguous and uncertain, a new trial should be granted.

**2. Trial §§ 37, 50b: Trespass to Try Title § 3—Held: Plaintiffs' motion to set aside verdict because of its ambiguity should have been granted.**

The parties to this action claimed under their respective State grants, and the controversy involved the establishment of the boundary between the respective tracts rather than title to the lands covered by the grants. A court map introduced in evidence showed the boundaries of the respective tracts as contended by the parties by green and red lines respectively. By separate answers to the issues, the jury found that the parties had title to the lands embraced in their respective grants but located the lands of both plaintiffs and defendant on the map as the area bounded by the red lines. The courses and distances of the red lines were not shown on the map, and both the surveyor who drew the map and another surveyor testified that the red lines were not correctly placed on the map, and resort to defendant's grant could not supply the deficiency because defendant contended that the courses and distances given in the grant were controlled by the calls therein to natural objects. *Held:* The verdict construed with reference to the pleadings, evidence, and charge of the

court is contradictory, ambiguous, and uncertain, and is insufficient to support the judgment in defendant's favor on his counterclaim for trespass in cutting and removing timber, and plaintiffs' motion to set aside the verdict should have been granted.

APPEAL by plaintiffs from *Nettles, J.,* at June Term, 1939, of GRAHAM.

Civil action to recover damages for alleged trespass.

For the purposes of the trial of this case the uncontroverted facts are these: (1) The plaintiffs own the land covered by State Survey No. 69, Grant No. 2275, and Entry 2335, Grant No. 2684. (2) The defendant owns the land covered by Entry 4341, Grant No. 2609. (3) The second corner of Grant 2275, a hickory, and the beginning corner of Grant 2684, a hickory, are the same and marked on the court map A-1. The southern boundary line of Grant 2275 is the northern boundary line of Grant 2609.

Plaintiffs allege ownership of a boundary of land comprising the descriptions in Grants 2275 and 2684, and contend that the said grants adjoin, and are in shape of parallelograms. They further contend that Grant 2684 is located by running the calls, with proper variation, east 160 poles, then south 300 poles, then west 160 poles, and then north 300 poles. They further contend that Grant 2275 is located by running the calls, with proper variation, beginning on a white oak and hickory, east 138 poles to a hickory, which is the beginning corner of Grant 2684, then south 162 poles, then west 138 poles, and then north to the beginning. They further contend that from the hickory, the second corner of Grant 2275, and the beginning corner of Grant 2684, the east line of Grant 2275 for its full length and the west line of Grant 2684 running north are in common; and that the southeast corner of Grant 2275 is in the west line of Grant 2684. They further contend that Grant 2609 begins in the south line of Grant 2275 and runs east 66 poles to the west line of Grant 2684 at the southeast corner of Grant 2275; that the next call in Grant 2609 runs south with the said line of Grant 2684, 97 poles to a post in the line of Entry 1087, then with that line north 45 west 98 poles to a corner of said grant, then with the same south 45 west 102 poles, then north 100 poles to the southwest corner of Grant 2275, and then east 72 poles to the beginning.

Plaintiffs further contend that as Grants 2275 and 2684 are thus located, the defendant has unlawfully trespassed thereon by cutting timber, and pray judgment for damages.

Defendant, on the other hand, contends that Grant 2684 is not in shape of parallelogram; that the corner, a beech, now gone, called for at the end of the first line is not at the point reached by running the line

according to course, on proper variation, and distance specified in the grant; that in order to reach the location of the natural object called for, the line should be run on a course north of east, a distance greater than called for; that then continuing the second and third calls, the point reached is not south of the beginning; that hence the last line of said grant is on northwest course; that as a result there is a boundary of land between the last line thus run and the last line as contended for by plaintiffs; that the boundary between the lines of those last contentions is covered by Grant 2609; and that plaintiffs have committed acts of trespass thereon by cutting timber to his damage for which he counter-claims.

These issues were submitted to and answered by the jury as follows:

"1. Are the plaintiffs the owners of and entitled to the possession of the lands described in State Survey No. 69, Grant No. 2275, and Entry No. 2335, Grant 2684? Answer: 'Yes.'

"2. How are said tracts of land located on the court map? Answer: 'By the red lines of the court map.'

"3. Has the defendant trespassed on said lands? Answer: 'No.'

"4. What damage, if any, is the plaintiff entitled to recover of the defendant? Answer: .................... .....

"5. Is the defendant the owner of the land described in and embraced in Grant 2609, Entry No. 4341? Answer: 'Yes.'

"6. How is said grant located on the court map? Answer: 'By the red lines of the court map.'

"7. Has the plaintiff trespassed on said land? Answer: 'Yes.'

"8. What damage, if any, is the defendant entitled to recover of the plaintiffs? Answer: 'Six hundred ($600.00) dollars.' "

Plaintiffs moved to set aside the verdict and for a new trial. Motion overruled. Exception.

Bearing upon the sufficiency of the verdict, it appears that:

The evidence tends to show that the court map was drawn by two surveyors, W. A. Adams and Roy Sherrill, appointed by the court for that purpose.

The evidence further tends to show that in making the map Adams platted Grants 2275, 2684, and 2609 and Entry 1087 in accordance with plaintiffs' contention, and traced in green color all the lines except the lines representing the first and last calls of Grant 2275, and indicated the corners mainly by capital letters. As thus indicated on the court map the corners of the grants are: For Grant 2684 the letters. A, B, C, and D; for Grant 2275 "hickory and white oak," A, F, and J; for Grant 2609 BO-E, F, G, H, I, and J; and for Entry 1087, drawn in shape of square, the letters G, H, and I at points of contact with Grant 2609.

CODY v. ENGLAND.

The evidence further tends to show that Sherrill platted the same grants to show their locations as the defendant contends, and traced the corresponding lines of such location in red color, with figures to indicate the corners. As thus indicated on the court map the corners of grants are: For Grant 2684 the figures 1, 2, 3 and 4; for Grant 2275 "hickory and white oak," and the figures 1, 6, 16, and 10; for Grant 2609 the figures BO-5, 16, 6, 4, 7, 8, 9 and 10; and for Entry 1087 the figures 7, 8 and 9, at points of contact with Grant 2609.

The course and distance is not shown on the map with respect to any line in either contention. The red lines on the map, as explained in the testimony of witnesses, represent the defendant's contention of the location of Grants 2684 and 2609 and Entry 1087, and the southern line of Grant 2275.

On the trial below Surveyor Sherrill testifying as witness for defendant, said in substance that after the map was made he found that the red line from A-1, the beginning corner of Grant 2684, to the figure 2 "is a little too far north of what it should be"; that from the point B, at the end of line A-1—B, "to the red line is 62 feet from where it should be to beech. My line may show it to be 200 feet. . . . My line at the figure 3 is probably out just the same amount. That would pull my red line 200 feet nearer the blue line at the bottom. There wouldn't be much difference between the blue and red on the ground." It appears that the witness, in speaking of blue lines, refers to the green lines.

Another surveyor, J. Arthur Rogers, as witness for defendant, testified: "This plat is not correct so far as figure 2 is concerned. It is not properly placed on the map. By placing a scale stick across there and drawing a line from it to where figure 2 should be, it would cut off 160 or 170 feet. By adding 170 feet to the other end of the red line it would make it scale about right. Add that to the south end of the line at figure 4, exactly what you drop off at figure 2, it would take you where I would mark W."

The court signed judgment in which it is decreed that: "The plaintiffs are the owners of and entitled to the possession of the land bounded by the lines as shown on the court map as follows:

"Beginning at 'hickory, white oak,' the Northwest corner of State Survey No. 69, Grant No. 2275, and runs East with the North boundary line of State Survey No. 69 to 'Hickory 1-A,' the Northeast corner of State Survey No. 69, and Northwest corner of Entry No. 2335, Grant No. 2684; then East with the 'red line to figure 2' on the court map; then South with the red line to figure '3' on the Court map; then West with the 'red line to figure 4' then Northerly with the 'red line,' the East boundary of the portion shaded in yellow on the Court map to

figure '6' then West with the 'red line' passing points designated '16' and '5' respectively to a point designated figure '10-J' on the Court map, the Southwest corner of State Survey No. 69, Grant No. 2275; then North to the beginning, hickory white oak corner, the Northwest corner of said State Survey No. 69."

The court further decreed "That the defendant is the owner and entitled to the possession of the land bounded by the red lines of the Court map, as follows:

"Beginning at a point designated on the map '10-J' the Southwest corner of State Survey No. 69, Grant No. 2275, and Northwest corner of Grant No. 2609, and running east with the red line with the South boundary line of State Survey No. 69, Grant No. 2275, passing point 'B. O. 5' and point '16' respectively to a point designated on the Court map at figure '6' then South with the red line along the East boundary of area shaded in yellow on the Court map, and with the West boundary line of Entry No. 2335, Grant No. 2684 as designated on the Court map to a point designated figure '4' then West with the red lines along the South boundary of said area shaded in yellow to point '7' in the Northeast boundary of Entry No. 1087, Grant No. 2683; then with the Northeast boundary line of said Entry No. 1087 with the red line to the 'maple figure 8' the North corner of said Entry No. 1087 then Southwest with the Northwest boundary line of said Entry No. 1087 with the red line on the Court map to Figure '9'; then with the red line North to point '10-J' the Southwest corner of State Survey No. 69, the place of beginning."

The court further adjudged that defendant recover of plaintiffs the sum of six hundred dollars, and that the plaintiffs be taxed with the costs.

To the signing of the judgment plaintiffs excepted and appeal to the Supreme Court, and assign error.

*McKinley Edwards and R. L. Phillips for plaintiffs, appellants.*

*T. M. Jenkins, Morphew & Morphew, and J. N. Moody for defendant, appellee.*

WINBORNE, J.   While the plaintiffs bring forward and press for error numerous exceptive assignments, we think it appropriate to advert only to the exceptions to the refusal of the court to set aside the verdict and to the judgment. These are well taken and must be sustained.

The controversy is one of location of the boundaries of the land in question, rather than of title to such lands as are covered by the grants under which the respective parties claim. Such title is not controverted. The second and sixth issues relate to location. The answer to the third,

fourth, seventh and eighth issues are dependent upon the answers to the second and sixth. Plaintiffs attack the verdict for that the answers to the issues relating to location of the lands of plaintiffs and of defendant are inconsistent and contradictory, and too uncertain and ambiguous to support the judgment and dispose of the matters in controversy. They attack the judgment for uncertainty.

As expressed in many decisions of this Court, the law is that a verdict must be certain, responsive to the issues submitted and should establish facts sufficient to enable the court to proceed to judgment and dispose of the matters in controversy. *Hilliard v. Outlaw,* 92 N. C., 266; *Emery v. R. R.,* 102 N. C., 209, 9 S. E., 139; *McAdoo v. R. R.,* 105 N. C., 140, 11 S. E., 316; *Chapman-Hunt Co. v. Board of Education,* 198 N. C., 111, 150 S. E., 713; *Plotkin v. Bond Co.,* 200 N. C., 590, 157 S. E., 870.

"A verdict finding matter uncertainly or ambiguous is insufficient, and no judgment should be given thereupon." *Crews v. Crews,* 64 N. C., 536. This may arise from the answer to the issue being indefinite. *Kornegay v. Kornegay,* 109 N. C., 188, 13 S. E., 770; *Howell v. Pate,* 181 N. C., 117, 106 S. E., 454. If ambiguous in its terms, the ambiguity may sometimes be explained and the verdict interpreted by reference to and in connection with the pleadings, the evidence and the charge of the court. *Howell v. Pate, supra; Kannan v. Assad,* 182 N. C., 77, 108 S. E., 383; *S. v. Snipes,* 185 N. C., 743, 117 S. E., 500; *S. v. Whitley,* 208 N. C., 661, 182 S. E., 338.

When so construed, "if the true intent and meaning of the verdict is found to be doubtful, uncertain and ambiguous" a *venire de novo* should be granted. *Donnell v. Greensboro,* 164 N. C., 330, 80 S. E., 377; *Sitterson v. Sitterson,* 191 N. C., 319, 131 S. E., 641; *Short v. Kaltman,* 192 N. C., 154, 134 S. E., 425; McIntosh P. & P., 675.

The verdict and judgment establishing the disputed boundaries should be so definite that the lines can be run in accordance therewith. Otherwise, the judgment would not sustain a plea of *res judicata* in a subsequent suit between the same parties, involving the same subject matter, but would only necessitate another suit to settle the same case. 9 C. J., 293, Boundaries, section 354.

When tested by these principles, the verdict in the case in hand, interpreted by reference to the pleadings, facts in evidence, the court map, and the charge of the court, is contradictory, ambiguous and uncertain, and wholly insufficient to support the judgment. The jury has answered both the second issue, which relates to the location of the lands owned by the plaintiffs, and the sixth issue, as to the location of defendant's land, in identical words: "By the red lines on the court map." The red lines on the court map cover not only Grant 2684, which the plaintiffs own, but Grant 2609, which the defendant owns, as well as Entry 1087,

20—216

the ownership of which does not appear. Nothing else appearing, by the answer to the second issue, the jury has said that the location of plaintiffs' land includes all the land within the red lines on the court map, and by the answer to the sixth issue, that the location of defendant's land includes the same. But if this contradictory and inconsistent condition on the verdict did not exist, the testimony of the surveyor who put the red lines on the map, and another, shows that the red lines indicating the location of Grant 2684 as contended by defendant are not correctly placed on the map. The courses and distances of the red lines are not shown on the map. Resort to the calls of the grant does not supply the deficiency, for the defendant contends that the first call in this grant is not controlled by the course and distance given, but that a different course and distance should be applied to arrive at the point on which the natural object called for formerly stood.

In the judgment below the verdict of the jury is apparently interpreted in relationship to the map to which the verdict refers. The map being devoid of certainty affords no basis for making certain the location of the lands in question and lends no support to the judgment.

Other assignments are not considered. Since there must be a new trial the matters to which they relate may not recur.

New trial.